UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUNA PARIS,<br>*Plaintiff*,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br>*Defendant.* | No. 3:21-cv-00711 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Bruna Paris ("Paris" or "Plaintiff") has sued her employer, United Parcel Service, Inc. ("UPS" or "Defendant"), for retaliation for exercising her rights under the Connecticut's Workers' Compensation Act. Ex. A to Notice of Removal, ECF No. 1 ("Compl.").

Defendant has filed a motion for summary judgment. Mot. for Summ. J., ECF No. 24 ("Mot.").

For the following reasons, Defendant's motion for summary judgment is **DENIED**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

   **A.   Factual Background[1]**

In May 2017, UPS hired Paris as a hub sorter in its Hartford facility. Compl. ¶ 3–5; Pl.'s Opp'n to Summ. J. at 3, ECF No. 31 (Opp'n). As a hub sorter, Paris moved and sorted packages from a conveyor belt into color-coded cages for further processing. L.R. 56(a)1 Statement of Facts ¶ 2, ECF No. 24-2 ("Def.'s SMF"). At the time relevant to this lawsuit, Paris also held a second job at Red Lion. Opp'n at 5.

---

[1] The following facts are taken from the Complaint, the parties' Local Rule 56(a) statements, and related documents. The facts are presented in the light most favorable to Paris as the non-moving party.

While employed with UPS, Paris joined the bargaining unit represented by the International Brotherhood of Teamsters, Local No. 617 (the "Union"). Def.'s SMF ¶ 6. The Union and UPS negotiated two Collective Bargaining Agreements (the "CBA") that govern the terms of employees, including Paris. *Id*. ¶ 7.

The CBA provides that employees may only be disciplined for "just cause" and that before discharge, they are entitled to one warning that erases after nine months. *Id*. ¶ 8. There is an exception to this provision for committing a "cardinal infraction," defined as "dishonesty or drunkenness or drinking during working hours . . . recklessness . . . use or possession of illegal drugs or the carrying of unauthorized passengers." *Id*.

On May 2, 2019, while sorting packages into cages at Slide 3, *id*. ¶ 9, around 5:00 a.m., Paris allegedly sustained an on-the-job injury. Compl. ¶ 7. She stopped working and allegedly reported her injury to her part-time supervisor, Narjay Hinds ("Mr. Hinds"), who contacted her full-time supervisor, Bryan Wunsch ("Mr. Wunsch" or "supervisor"). L.R. 56(a)2 Statement of Facts ¶ 10, ECF No. 31-2 ("Pl.'s SMF"); Def.'s SMF ¶ 10. At Mr. Wunsch's request, Paris reported to his office and allegedly stated that she was injured. Pl.'s SMF ¶ 12; Def.'s SMF ¶ 12. Paris then finished her shift in the "Small Sort," which is an area where the workload is less physically demanding. Def.'s SMF ¶ 13.

Paris finished her shift at UPS that morning, then called out from her shift that day at Red Lion. Def.'s SMF ¶ 15. Paris also called out from her shift the following day at UPS. Def.'s SMF ¶ 17. Mr. Wunsch contacted Paris the next morning to ask why she was not reporting to work. Def.'s SMF ¶ 18. Paris responded that she had been injured at UPS the day before. Def.'s SMF ¶ 19. Mr. Wunsch requested that Paris report to his office. Def.'s SMF ¶ 20.

Paris complied and explained to Mr. Wunsch how she was allegedly injured at UPS the day before. Compl. ¶ 16. UPS alleges that Paris described her injury as follows: "she removed a package from the slide using both hands, pivoted toward the cage, placed the package in a cage, and the same package fell back out of the cage onto her arm." Def.'s SMF ¶ 22. UPS then had Paris escorted to Connecticut Occupational Medicine Partners, LLC ("Medworks") for an evaluation. Compl. ¶ 20.

A provider at Medworks diagnosed Paris with a contusion on her right forearm. Def.'s SMF ¶ 28. She was released to return to work, effective May 3, 2019, with instructions to not lift more than ten pounds, among other limitations. Def.'s SMF ¶ 31.

Mr. Wunsch requested that UPS Security retrieve surveillance video from the camera in Paris's work area so that he could see exactly what happened to her. Def.'s SMF ¶ 34. UPS security retrieved the video of Paris working on May 2, 2019, and it depicted Paris sorting until a point where she began to shake her hand and wrist. Def.'s SMF ¶ 35; Pl.'s SMF ¶ 39; Opp'n at 6. None of the footage depicted a package falling onto Paris's arm. Def.'s SMF ¶ 36. As a result, Mr. Wunsch determined—and Division Manager Patricia Higgins ("Ms. Higgins") agreed—that Paris was dishonest in her report of her injury, a "cardinal infraction" under the CBA. Def.'s SMF ¶ 39–40.

When Paris returned to the facility from her medical evaluation, Ms. Higgins convened a meeting to discuss the incident. Def.'s SMF ¶ 41. At the meeting, Paris explained how she was injured, to which Ms. Higgins responded that Paris was being dishonest. Def.'s SMF ¶ 43. UPS discharged Paris that day and sent her a letter confirming that the discharge was for dishonesty under Article 59 of the CBA. Def.'s SMF ¶ 50.

Around May 12, 2019, Paris filed for workers' compensation. Mot., Ex. 14, ECF No. 24-16.

On August 2, 2019, Paris challenged the discharge, through her Union, by filing a grievance under the CBA, and her discharge was reduced to a suspension without pay for the period of May 3, 2019, through August 2, 2019. Def.'s SMF ¶ 53–54.

On August 14, 2019, UPS sent notice, by letter, reinstating Paris, and she continued her employment with UPS. Def.'s SMF ¶ 54–55, 58; Mot., Ex. 15, ECF No. 24-17.

### B. Procedural History

On April 29, 2021, Paris filed her Complaint in Connecticut Superior Court. Compl.

On May 25, 2021, UPS removed the case to federal court based on diversity jurisdiction. Notice of Removal, ECF No. 1.

On June 8, 2021, UPS filed its Answer to the Complaint. Answer, ECF No. 9.

On July 12, 2021, the Court issued a scheduling order. Scheduling Order, ECF No. 14.

On September 9, 2022, UPS filed its motion for summary judgment. Mot.; Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 24-1 ("Mem.").

On November 23, 2022, Paris filed her opposition to Defendant's motion for summary judgment. Opp'n.

On December 7, 2022, UPS filed a reply in support of its motion for summary judgment. Reply in Supp. of Def.'s Mot. For Summ. J., ECF No. 32 ("Reply").

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

### III. DISCUSSION

Paris alleges a single claim under Conn. Gen. Stat. § 31-290a, which prohibits an employer from discharging or discriminating against an employee for filing a claim for workers' compensation benefits, or otherwise engaging in protected activity.

UPS seeks summary judgment on two grounds. First, UPS argues that Paris's claim is not a workers' compensation retaliation claim, but rather a breach of contract claim under the CBA, a claim preempted by § 301 of the Labor Management Relations Act. Mem. at 9. Second, UPS argues that even if Paris's claim is not preempted, Paris cannot establish a prima facie case of retaliation, or otherwise establish a claim of retaliation. *Id*.

The Court will address each argument in turn.

### A. The Section 301 Preemption Issue

"Under § 301 of the Labor Management Relations Act, federal labor law displaces state law in cases that are substantially dependent upon an analysis of the terms of a labor contract or require an interpretation of such an agreement for their resolution." *Barbieri v. United Technologies Corp.*, 255 Conn. 708, 724 (2001) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n.3 (1987)). These claims "must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220 (citation omitted).

"When, on the other hand, a plaintiff covered by a CBA asserts 'legal rights independent of that agreement,' preemption does not occur." *Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201, 207 (2d Cir. 2019) (quoting *Caterpillar Inc.*, 482 U.S. at 396). "A state-law claim is 'independent' when resolving it 'does not require construing the collective-bargaining agreement.'" *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

UPS argues that, because Paris testified during her deposition that she "didn't deserve to be terminated," her retaliatory termination is a breach of contract claim, requiring interpretation of the CBA. Mem. at 9–10. UPS also argues that, even if Paris's claim is accepted as a discrimination claim rather than a contract claim, it cannot be analyzed without understanding the terms of the CBA. Mem. at 14. Specifically, UPS argues that it is relevant to how the parties define and have previously interpreted provisions of the CBA. *Id*.

In response, Paris argues that there is no language in the CBA that must be interpreted to resolve her claim under Conn. Gen. Stat. § 31-290a. Opp'n at 12.

The Court agrees.

To successfully raise a claim under § 31-290a, Paris ultimately must establish either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Mele v. City of Hartford*, 270 Conn. 751, 768 (2004) (citing *Diaz v. Housing Authority*, 258 Conn. 724, 730 (2001)).

Although UPS's proffered explanation for Paris's termination involves the "cardinal infraction" provision of the CBA, it does not require interpretation of it. Instead, as discussed further below, the critical issue is whether UPS's proffered reason for terminating Paris—her alleged dishonesty—was the true reason for her termination, rather than retaliation for exercising her rights under the Workers' Compensation Act. *See Mele*, 270 Conn. at 768 (explaining the burden-shifting framework).

In resolving this issue, as demonstrated by the analysis conducted below, this Court need not—and in fact, does not—rely on any provision of or any term in the CBA to resolve the dispute. *Cf. Caterpillar Inc.*, 482 U.S. at 395 (footnote omitted) (recognizing no preemption

7

where the lawsuit does not "substantially depend" upon a collective bargaining agreement, as well as where it "does not rely upon the collective agreement indirectly").

Accordingly, Paris's claim for retaliatory termination under Conn. Gen Stat. § 31-290a is not preempted by § 301 of the Labor Management Relations Act.[2]

### B. The Retaliatory Termination Claim

"A claim for workers' compensation retaliation is subject to the same burdens of proof as federal employment discrimination law." *Muoio v. Costco Wholesale Corp.*, No. 3:13-cv-44 (SRU), 2015 WL 222160, at *14 (D. Conn. Jan. 14, 2015) (citing *Ford v. Blue Cross & Blue Shield of Conn., Inc.*, 216 Conn. 40, 53 (1990)). "In order to prevail on summary judgment, the plaintiff is subject to the *McDonnell Douglas* burden-shifting regime, and [the plaintiff] must prove his prima facie case by a preponderance of the evidence." *Id*. (citing *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 632 n.9 (2013); *Mele*, 270 Conn. at 767–69). "To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

If the plaintiff has established a prima facie case, the burden then shifts to the defendant to identify a non-discriminatory, legitimate reason for the employment decision, though it need not convince the court that its reason actually motivated the employment action. *Tejada v. Wal-*

---

[2] UPS argues that, to the extent that Paris is asserting her federal labor *Weingarten* rights, such claim is subject to *Garmon* preemption. Mem. at 15–16. The Court, however, declines to address this argument as Paris has presented no such claim.

*Mart Stores, Inc.*, No. 3:06-cv-02049 (AWT), 2009 WL 839020, at *6 (D. Conn. Mar. 30, 2009) (citing *Ford*, 216 Conn. at 53–54; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

"If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the [factfinder] . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Mele*, 270 Conn. at 768 (quoting *Diaz v. Housing Authority*, 258 Conn. 724, 730 (2001).

UPS argues that, if Paris's claim is not preempted, then it fails as a matter of law as Paris cannot establish a prima facie case of workers' compensation discrimination.

For the purposes of this motion, UPS only disputes the final element—whether Paris can establish a causal connection between the protected activity and the adverse employment action. Mem. at 17. UPS argues that, because Paris filed her workers' compensation claim after she was terminated, there was no causal connection between the two events. *Id*. UPS also argues that it did not attempt to interfere with Paris's workers' compensation claim. *Id*.

UPS also argues that, even if Paris can make out a prima facie case, it has a legitimate, non-discriminatory reason for her termination: Paris's alleged dishonesty regarding how she was injured. Mem. at 18–19. UPS argues that Paris told her supervisor that she placed a package in a cage, and that the package then fell back out of the cage and onto her arm. Mem. at 4. But, as UPS also argues, contemporaneously maintained video evidence is inconsistent with Paris's account of how she was injured, and this inconsistency resulted in the charge of dishonesty, and

9

subsequently led to Paris's termination. Mem. at 18. Thus, in its view, UPS has presented a satisfactory non-discriminatory reason for terminating Paris, which cannot be explained away as pretext.

In response, Paris argues that her being fired on the same day she engaged in protected activity is sufficient to establish a causal connection.[3] Opp'n at 10. She also submits as causation evidence testimony that her supervisor at UPS told her to not to tell the doctor that she had been injured at UPS, which Paris states would have barred her from receiving workers' compensation benefits for her injury. *Id*. at 11. Paris argues that this allegation, taken with the temporal proximity, is sufficient to survive summary judgment. *Id*.

The Court ultimately agrees with Paris.

There is a sufficient basis in this record to determine that Paris has established a prima facie case. Indeed, "the complainant's initial burden of establishing a prima facie case is not onerous, and reviewing courts should not be preoccupied with whether a prima facie case has been established." *Sweeney v. Research Foundation of State University of New York*, 711 F.2d 1179, 1184 (2d Cir. 1983) (citing *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). At the prima facie case stage, under the right circumstances, temporal proximity alone can be sufficient. *See, e.g.*, *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) (holding one month between protected activity and the employer's allegedly adverse employment actions sufficient to establish causal link); *Gormon-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 555 (2d Cir. 2001) (holding that "only a few

---

[3] Although Paris does not expressly state the protected activity to which she is referring, she seems to be referring to the initial report of her workplace injury on May 3, 2019. Opp'n at 10; Mem. at 17. *See also Bonner v. Tri-Wire Engineering Solutions, Inc.*, No. DBDCV196030318S, 2019 WL 4201525, at *3 (Conn. Super. Aug. 12, 2019) ("Immediately notifying an employer of a work injury, taking time off due to the injury, and seeking medical treatment following a work injury are all protected activities, and constitute an exercise of rights under the [Workers' Compensation Act].").

days" between protected activity and the employer's allegedly adverse employment actions sufficient to establish causal link). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). On this record, the time period between when Paris complained of her workplace injury and her termination are sufficiently close to warrant the establishment of the appropriate temporal link. *See* Opp'n, Ex. 1 at 69 ("Q: So you were discharged on May 3rd and you were injured on May 2nd?").

Given UPS's proffered legitimate, non-discriminatory reason for her termination—her alleged dishonesty—Paris must provide evidence to refute UPS's proffered reason directly by showing that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Mele*, 270 Conn. at 768 (citations omitted). "Pretext may be demonstrated either by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence' or by reliance on the evidence comprising the prima facie case, without more[.]" *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (citations omitted) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Here, Paris admits that she "claimed that she removed package from the slide using both hands, pivoted toward the cage, placed the package in a cage, and the same package fell back out of the cage onto her arm." Def.'s SMF ¶ 22; Pl.'s SMF ¶ 22. She also admits that the surveillance video does not reflect a package falling onto her arm. Def.'s SMF ¶ 36; Pl.'s SMF ¶ 36. These admissions support UPS's position that the company considered her to be untruthful as to how

she allegedly got injured. But there is no dispute of another critical fact: whether Paris had an injury. *See, e.g.,* Opp'n, Ex. 1 at 63–64 ("Q. And then after the hour, Scott Livingston came to take you to MedWorks? A. Yes; Q. So you both went together to MedWorks. Did he stay with you at MedWorks? A. Yes, he did; Q. And how long was your appointment at MedWorks? A. A half hour to an hour. Q. And what happened at MedWorks? A. I met with the doctor at MedWorks and he told me not to lift anything. He advised me not to lift anything. Q. Because? A. I had on the documentation it stated I had a right forearm contusion."); *see also* Def.'s SMF, ¶¶ 28–29 ("Ms. Paris was evaluated at Medworks, in Newington, Connecticut, and diagnosed with a "contusion of right forearm . . . . and Ms. Paris did have tenderness on the palm-side of her mid-forearm down to her wrist.").

And given the evidence of Paris having sustained some injury, rather than a complete lack of any such evidence in this record, a genuine issue of fact remains as to what motivated UPS's decision to terminate her. *See McPherson v. New York City Dept. of Educ.*, 457 F.3d 211 (2d Cir. 2006) ("In a discrimination case, . . . [w]e are interested in what '*motivated* the employer[.]'") (quoting *Aikens*, 460 U.S. at 716). UPS's focus on how she claimed to have been injured, given her actual—and seemingly undisputed—injury, raises an issue as to its motivation, a credibility determination for a jury, not this Court, *see Page v. J.C. Penny Corp., Inc.*, No. 3:05-cv-01618 (VLB), 2007 WL 2712343, at *2 (D. Conn. Sept. 17, 2007) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.") (quoting *McClellan v. Smith*, 439 F.3d 137, 148 (2d Cir. 2006)), particularly since one of Paris's supervisors allegedly told her not to report to a medical provider that she had been injured while at UPS. *See* Compl. ¶ 31 ("Defendant attempted to dissuade plaintiff from exercising her rights under Connecticut's Workers'

Compensation Act by telling her to go to the doctor and tell the doctor that she did not get injured on the job."); *see also* Opp'n, ex. 1 at 86–87 ("Q. Bryan told you to tell the doctor that you didn't lift anything at UPS that hurt you? A. Correct.").

Accordingly, Defendant's motion for summary judgment will be denied.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of September, 2023.

                                              /s/ Victor A. Bolden
                                              VICTOR A. BOLDEN
                                              UNITED STATES DISTRICT JUDGE